# United States District Court
# District of Massachusetts

SEAN NOBILE,
    Plaintiff,

V.                               CIVIL ACTION NO. 2008-11048-PBS

COMMONWEALTH OF MASSACHUSETTS,
    ET AL.,
        Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANT, NAPHCARE, INC.'S MOTION FOR SUMMARY JUDGMENT (#77)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On June 19, 2008, Sean Nobile ("Nobile") filed a complaint (#2) against NaphCare, Inc. ("NaphCare"), among others, alleging federal Civil Rights Act violations (Count I), intentional infliction of emotional distress (Count II) and medical malpractice (Count III). Nobile contends that NaphCare acted with

deliberate indifference to his serious medical needs, putting him at a substantial risk of injury and causing avoidable pain and mental suffering in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[1]  The plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive and/or exemplary damages, prejudgment interest, and reasonable attorney fees, expenses and costs.

On June 24, 2008, Nobile filed a first amended complaint (#4) which incorporated the same claims against Naphcare.  On September 23, 2008, NaphCare filed a Motion to Dismiss (#31) pursuant to Fed. R. Civ. P. 12(b)(6). On September 30, 2008, Nobile filed a motion to dismiss without prejudice Count III (#33)[2] and a second amended complaint (#34) again alleging civil rights violations and a claim for intentional infliction of emotional distress against NaphCare.  On October 17, 2008, the Court denied NaphCare's motion to dismiss without prejudice while allowing Nobile to amend his complaint to include specific allegations of negligence or civil rights violations after July 1,

---

[1] The Eighth Amendment is made applicable to the states through the Fourteenth Amendment. *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1 Cir.), *cert. denied*, 488 U.S. 823 (1988); *Torraco v. Maloney*, 923 F.2d 231, 233-4 and n. 3 (1 Cir., 1991).

[2] This motion to dismiss was allowed by Judge Saris on October 1, 2008.

2008. On November 3, 2008, Nobile filed a third amended complaint (#40) alleging only civil rights violations against NaphCare.

On August 3, 2009, NaphCare filed a motion for summary judgment (#77) together with a memorandum in support (#78), a statement of undisputed material facts with exhibits (#79), and an affidavit of Marco T. Bon Tempo (#80). Nobile filed an opposition with an exhibit to the dispositive motion (#82) on August 17, 2009. On August 21, 2009, NaphCare filed a motion for leave to file a reply (#83), which was granted; that reply (#84) was filed on August 24, 2009. Upon being notified by the Court that no statement of disputed material facts had been filed by the plaintiff, nor had an affidavit authenticating his exhibit been submitted, Nobile filed a statement of disputed material facts and the affidavit of Bradford Eliot Keene (#87) on October 13, 2009. At this juncture, the motion for summary judgment is poised for resolution.

## II. Factual Background

Nobile was injured in a motor vehicle crash in or about October of 1994. (#40 ¶ 23; #79 ¶ 4; #87 ¶ 4) As a result of those injuries, the plaintiff had surgical procedures to amputate his left leg below the knee, to create an Indiana

pouch to store and eliminate urine, and to resection the bowel creating a colostomy to store and eliminate feces. (#40 ¶ 23; #79 ¶ 4; #87 ¶ 4) He was prescribed pain medication, and is required to catheterize himself frequently to eliminate urine and feces. (#40 ¶ 23[3])

It is undisputed that in October of 2007, Nobile came into the custody of the Essex County Corrections Facility ("ECCF") while awaiting trial on charges of possession with intent to distribute a controlled substance within a school zone. (#79 ¶ 1; #87 ¶ 1) At the time of Nobile's incarceration, the co-defendant Correctional Medical Systems ("CMS") was under contract with the Essex County Sheriff's Department ("Sheriff's Department") to provide health care services to ECCF. (#79 ¶ 2; #87 ¶ 2) On July 1, 2008, NaphCare took over the provision of health care services to inmates at ECCF and continues to provide health care services to the present day. (#79 ¶ 3; #87 ¶ 3)

Commencing in July of 2008 and continuing through June of 2009, Nobile sought medical attention from NaphCare for the following complaints: ill fitting leg prosthesis that caused cutting of the groin area and unstable ambulation; stomach and phantom pain; multiple hernias around colostomy bag

---

[3] NaphCare claims to be without knowledge sufficient to admit or deny this allegation. (#87 ¶ 23)

and stoma; and drainage from penis and rectum. (#79 ¶ 6; #87 ¶ 6) Since July 1, 2008 the plaintiff was seen by Naphcare doctors and nurses on more than twenty-five occasions for health screenings, annual health assessments, special needs notifications, physicians' orders for prescriptions and medical supplies, as well as visits for hernias, drainage from his penis and rectum, stomach/hernia pain and left leg prosthesis. (#79 ¶ 7; #87 ¶ 7) Nobile refused referrals to the Lemuel Shattuck Hospital for consultation on his hernias and drainage issues on three separate occasions, but the plaintiff explains that he refused because the Lemuel Shattuck Hospital staff had perforated his bladder when previously addressing his hernias and drainage issues so he feared further bodily injury at their hands. (#79 ¶ 8; #87 ¶ 8) Nobile disputes the fact that he refused annual physical health assessments on three occasions to the extent that he claims he was continually requesting appropriate medical care. (#79 ¶ 9; #87 ¶ 9[4]) Twice the plaintiff failed to appear for medical appointments, but again Nobile explains that he feared

---

[4] Nobile waived the November 11, 2008 assessment because he had just received one for a surgical operation at Lemuel Shattuck Hospital. (#79, Exh. C)

further bodily damage from the staff at Lemuel Shattuck Hospital. (#79 ¶ 9; #87 ¶ 9[5])

Nobile's medical records reflect that since January 2009 he received "Physician's Orders" for medication and/or medical supplies on at least eight occasions. (#79 ¶ 11) The plaintiff disputes that fact in that he states that he was requesting medical supplies on a daily basis and was not receiving them. (#87 ¶ 11) Naphcare states that it coordinated examinations with Cornell Orthotics for the replacement of the plaintiff's left leg prosthesis, which Nobile does not deny except that the prosthesis was not replaced and continued to deteriorate. (#79 ¶ 12; #87 ¶ 12[6]) Naphcare made several attempts to schedule appointments for the plaintiff with his urologist, Dr. Dickens Ko, of Massachusetts General Hospital; Nobile disputes this fact, stating that he was preliminarily examined at MGH, but no treatment plan was ever effectuated. (#79 ¶ 13; #87 ¶ 13)

On June 2, 2009, Nobile was placed in the infirmary to document his

---

[5]

The plaintiff's journal reflects that on one of the dates he failed to appear for a scheduled medical appointment, July 28, 2008, he was in court. (#87, Exh. 2 at 100)

[6]

On August 13, 2008, Nobile was seen at Cornell Orthotics & Prosthetics ("Cornell") where a prescription was issued to replace the current socket on his prosthesis with a suction socket for better stability and control. (#79, Exh. C; #82, Exh. 2)

drainage, monitor his ostomies and to determine if Nobile could care for himself. (#79 ¶ 14; #87 ¶ 14)  The plaintiff remained in the infirmary for observation until his transfer to Maine.[7]  (#79 ¶ 14; #87 ¶ 14)

### III.  *Summary Judgment Standard*

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  *Rojas-Ithier v.  Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1 Cir., 1992), *cert. denied*, 507 U.S. 1030 (1993)); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).  The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003); *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 115-16 (1 Cir., 2004).  "'Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists.'"  *Cordero-*

---

[7] Nobile was transferred from ECCF to a correctional facility in Maine in late June 2009. (#79 ¶ 20; #87 ¶ 20)

*Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1 Cir., 2005) (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1 Cir., 2004)); *see also Mulvihill*, 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1 Cir., 2000)).

When considering whether to grant summary judgment, the Court must determine whether "…the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court looks to "the record on summary judgment in the light most favorable to the nonmovant." *Hoffman v. Applicators Sales and Service, Inc.*, 439 F.3d 9, 11 (1 Cir., 2006) (citing *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1 Cir., 2000)). All reasonable inferences will be drawn in the favor of the nonmoving party. *Poulis-Minott v. Smith*, 388 F.3d 354, 361 (1 Cir., 2004); *see also Alliance of Auto Mfrs. v. Gwadosky*, 430 F.3d 30, 34 (1 Cir., 2005), *cert. denied*, 547 U.S. 1143 (2006); *Santoni v. Potter*, 369 F.3d 594, 598 (1 Cir., 2004); *Mulvihill*, 335 F.3d at 19; *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 13 (1 Cir., 2003).

Despite this "notoriously liberal" standard, *Mulvihill*, 335 F.3d at 19,

summary judgment cannot be construed as "a hollow threat." *Kearney v. Town of Wareham*, 316 F.3d 18, 22 (1 Cir., 2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Poulis-Minott*, 388 F.3d at 362-63 (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1 Cir., 1993), *cert. denied*, 511 U.S. 1126 (1994)); *Rojas-Ithier*, 394 F.3d at 42; *Calero-Cerezo v. U. S. Dep't of Justice*, 355 F.3d 6, 19 (1 Cir., 2004). Mere speculations raised by the nonmoving party that are unsubstantiated will not be sufficient to defeat summary judgment. *Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 5 (1 Cir., 2005).

In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *De La Vega*, 377 F.3d at 115; *Rojas-Ithier*, 394 F.3d at 42.

The focus at the summary judgment phase "'should be on the ultimate

issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact.'" *Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 535 (1 Cir., 2002) (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 430-31 (1 Cir., 2000)); *see also Nieves-Luciano*, 397 F.3d at 4; *Rojas-Ithier*, 394 F.3d at 42. The party objecting to summary judgment must set forth specific facts proving a genuine issue of material fact in order to "'deflect the swing of the summary judgment scythe.'" *Noviello v. City of Boston*, 398 F.3d 76, 84 (1 Cir., 2005) (quoting *Mulvihill*, 335 F.3d at 19). Where "the non-moving party rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation,'" summary judgment will be appropriate. *Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1 Cir., 2006) (quoting *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1 Cir., 2003) (further internal citations omitted)). Moreover, the party objecting to summary judgment may not rest "merely on allegations or denials in [their] own pleading." Fed. R. Civ. P. 56(e); *Ramirez Rodriguez v. Boehringer Ingelheim*

*Pharmaceuticals, Inc.*, 425 F.3d 67, 83 (1 Cir., 2005). Instead, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### *IV. Discussion*

Naphcare advances a single argument in support of its summary judgment motion: "Nobile has failed to demonstrate that NaphCare has acted with deliberate indifference to his medical condition or in relation to his medical treatment."[8] (#78 at 9-10; #84 at 2) When bringing a civil rights

---

[8] In its reply to the plaintiff's opposition to the motion for summary judgment (#84), NaphCare argued for the first time it was a state actor such that the claims against it were barred by the Eleventh Amendment. The Court issued a Procedural Order (#101) directing NaphCare to file a pleading either abandoning the Eleventh Amendment immunity claim or submitting evidence to support its burden of demonstrating that it is an "arm of the state" entitled to Eleventh Amendment immunity. On January 5, 2010, NaphCare responded to the Procedural Order stating that it "does not claim that it is an 'arm of the state' entitled to Eleventh Amendment immunity." (#104 at 1) The defendant "clarifie[d] that…it will rely solely on the undisputed facts and law set forth in its August 3, 2009 moving papers…[which] demonstrate that this plaintiff simply cannot meet the high threshold established in the First Circuit for a prisoner to demonstrate 'deliberate indifference' by NaphCare to his serious medical needs." (#104 at 1-2 (citation omitted)).

action under 42 U.S.C. § 1983[9], "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)(citations omitted); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1 Cir., 2005). The Supreme Court has long recognized that because an inmate must rely on prison authorities to treat any medical needs, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."[10] *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976)(internal citation omitted); *West*, 487 U.S. at 48. Thus, deliberate indifference to a prisoner's serious medical needs offends the Constitution and is actionable under § 1983. *Estelle*, 429 U.S. at 105; *Farmer*

---

[9]

Title 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[10]

During the relevant time period Nobile was a pretrial detainee (#79 ¶ 1; #87 ¶ 1) and, consequently, the Fourteenth Amendment is applicable. "The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1 Cir., 2007)(citation omitted).

*v. Brennan*, 511 U.S. 825, 834 (1994); *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1 Cir., 2007).

According to the First Circuit, "[a] 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mahan v. Plymouth County House of Corrections*, 64 F.3d 14, 18 (1 Cir., 1995)(citation omitted). In the instant case, it is clear that Nobile had serious medical needs while he was incarcerated at ECCF during the period when NaphCare provided health care services at that facility. The plaintiff suffered from pre-existing injuries and medical conditions, i.e., he had a colostomy bag for voiding feces, an Indiana pouch for voiding urine, and a below-the-knee left leg prosthesis. It is undisputed that Nobile complained about an ill fitting prosthesis, stomach and phantom pain, hernias and drainage from his penis and rectum. These serious medical needs continued throughout Nobile's incarceration at ECCF.

In a recent articulation of the applicable standard, the First Circuit wrote:

> Deliberate indifference in this [prison] context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with "actual knowledge of impending harm, easily

> preventable." [*Feeney v. Corr. Med. Servs., Inc.,* 464 F.3d 158] at 162 [(1 Cir., 2006), *cert. denied*, 552 U.S. 847 (2007)] (internal quotation marks omitted). Deliberate indifference means that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Burrell [v. Hampshire County]*, 307 F.3d [1] at 8 [(1 Cir., 2002)] (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation. *Feeney,* 464 F.3d at 161-62.

*Ruiz-Rosa,* 485 F.3d at 156.

Without doubt, the First Circuit has construed "deliberate indifference" quite narrowly. Summary judgment is appropriate "where there is no evidence of treatment 'so inadequate as to shock the conscience, let alone that any deficiency was intentional,' [*Sires v. Berman*, 834 F.2d 9, 13 (1 Cir., 1987)], or evidence of acts or omissions 'so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred.'" *Torraco,* 923 F.2d at 234 (quoting *Cortes-Quinones,* 842 F.2d at 558 (further citations omitted).

In general when deliberate indifference has been found, or when there

14

is potential for such a finding, prisoners were denied any and all treatment for a serious medical condition. *See*, e.g., *Watson v. Caton*, 984 F.2d 537, 540 (1 Cir., 1993) (a claim not frivolous when prison nurse who refused to treat prisoner for injury that ultimately required surgery because injury occurred before prisoner was incarcerated); *Ferranti v. Moran*, 618 F.2d 888, 891 (1 Cir., 1980) (denial of all treatment for painful back injury would strongly suggest an attitude of deliberate indifference). The First Circuit has also concluded that "deliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" *Torraco*, 923 F.2d at 234 (quoting *Miranda v. Munoz*, 770 F.2d 255, 259 (1 Cir., 1985)(further quotations omitted).

Viewing the record in a light most favorable to Nobile, not every claim the plaintiff raises meets the standard of deliberate indifference. First, it is clear from the undisputed facts that Nobile received medical treatment for his ailments; within an eleven month period he was seen by Naphcare employees, including doctors and nurses, more than twenty-five times, and during his final few weeks at ECCF he was housed in the infirmary. Although the plaintiff found this treatment to be substandard, such a claim does not rise to the level

of deliberate indifference. *Feeney*, 464 F.3d at 162.  Second, Nobile's view of what the proper course of treatment for his medical needs should be differs from that of NaphCare.  Again, however, a disagreement on the appropriate course of treatment does not evidence deliberate indifference to serious medical needs. *Feeney*, 464 F.3d at 162.  Thus, Nobile's preference to be treated by Dr. Ko rather than the staff at Lemuel Shattuck Hospital does not meet the high standard of deliberate indifference, nor do the plaintiff's explanations as to why he did not want to return to Lemuel Shattuck Hospital render NaphCare deliberately indifferent to his medical needs.

There is one area of disputed material fact, and that is in terms of the medical supplies Nobile received while under NaphCare's medical care.  It is undisputed that NaphCare knew about Nobile's pre-existing medical conditions, namely his colostomy bag for voiding feces and Indiana pouch for voiding urine. Because of his medical conditions, the plaintiff required certain supplies to maintain and care for himself, specifically 4x4 pads or the equivalent to absorb the drainage from his rectum and penis and alcohol wipes or the equivalent to change the colostomy bag and Indiana pouch. (#79, Exh. E; #82, Exh. 2)  Nobile's journal reflects that he frequently requested such

supplies, that he frequently did not receive any and, consequently, was forced to use t-shirts and bed sheets to prevent his drainage from leaking everywhere. (#82, Exh. 2) Without being given the proper supplies or an adequate amount of supplies, there would be little Nobile could do to care for himself and he would be left to wallow in his own discharge raising an obvious grave risk of infection and/or illness.  It is a question of fact for the jury to decide whether NaphCare, with knowledge of Nobile's medical conditions, provided the plaintiff with an amount and/or type of requisite medical supplies that were "so clearly inadequate as to amount to a refusal to provide essential care.'" *Torraco*, 923 F.2d at 234 (quoting *Miranda*, 770 F.2d at 259 (further quotations omitted)).[11]

Having addressed the only issue raised by the dispositive motion, the Court need go no further.

---

[11] If Nobile's allegation that NaphCare is responsible for "inhumane conditions" at ECCF purports to be something more than a failure to supply an appropriate amount and/or type of requisite medical supplies, the claim is without merit. It is undisputed that NaphCare provides health care services to inmates at ECCF. (#79 ¶ 3; #87 ¶ 3)  There is no evidence to establish that NaphCare operates or manages ECCF, or in some other manner could be held responsible for the conditions at ECCF.

## V. Recommendation

Because a genuine issue of material fact exists as to whether NaphCare was deliberately indifferent to Nobile's serious medical needs, I RECOMMEND that Defendant, NaphCare, Inc.'s Motion For Summary Judgment (#77) be DENIED.

## VI. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart,*

*Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

February 18, 2010.